CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 03, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| BEARHAWK AIRCRAFT, INC., | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 7:26CV884 |
| ROBERT BARROWS, | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

Plaintiff Bearhawk Aircraft, Inc. ("BAI") files this Complaint against Defendant Robert Barrows ("Barrows") and alleges as follows:

**INTRODUCTION**

This is a civil action under 15 U.S.C. § 1071(b), seeking *de novo* review of the Trademark Trial and Appeal Board's decision in Opposition No. 91307326 and a declaratory judgment that Plaintiff BAI is entitled to register four BEARHAWK-formative trademarks for airplanes and structural parts therefor. The dispute arises from Defendant Barrows's attempt to claim exclusive rights in the BEARHAWK name, which AviPro Aircraft, Ltd. had used in connection with its aircraft kits and parts since at least 2000. Barrows expressly licensed AviPro to use the BEARHAWK name for more than two decades without exercising quality control for at least three years.

In 2023, BAI acquired AviPro and began manufacturing and selling airplane kits and parts under the BEARHAWK AIRCRAFT trademark and various other BEARHAWK-formative trademarks. BAI then obtained U.S. Registration No. 7711440 for BEARHAWK AIRCRAFT covering *airplanes and structural parts therefor* in International Class 12. When BAI attempted

to register the trademarks at issue in this case, Barrows opposed BAI's registration of the marks with the USPTO on the alleged grounds of likelihood of confusion and fraud on the USPTO. Barrows's allegations fail for several independent reasons. Barrows abandoned any rights he may have held in the BEARHAWK marks for airplanes and structural parts by granting AviPro a naked license without retaining quality-control rights. Barrows later permitted BAI to operate under the BEARHAWK AIRCRAFT KITS name—again without reserving any quality-control or inspection rights. And even assuming Barrows retained trademark rights, the parties' respective products, sophisticated customers, and distinct commercial uses establish that there is no likelihood of confusion. Accordingly, BAI seeks a judgment declaring that BAI's BEARHAWK-formative marks are registrable and that BAI is entitled to their registration.

## PARTIES

1. Plaintiff Bearhawk Aircraft, Inc. is an Oklahoma corporation with its principal place of business at 1700 North Main, Airport 6K4, Fairview, Oklahoma 73737. BAI designs, manufactures, and sells airplane kits, airplanes, and structural parts for airplanes.

2. Defendant Robert Barrows is an individual domiciled in Fincastle, Virginia, at 2079 Breckinridge Mill Road, Fincastle, Virginia 24090. Barrows does business under the assumed name "R&B Aircraft Co."

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 15 U.S.C. § 1071(b), because BAI is a party to an inter-partes opposition proceeding before the Trademark Trial and Appeal Board ("TTAB") and is dissatisfied with its decision in that proceeding. This Court also has jurisdiction

under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), because this action arises under 15 U.S.C. § 1051 *et seq.*, the Lanham Act.

4. This action is timely. The TTAB entered its final decision on September 2, 2026. This action is commenced within sixty-three (63) days of that decision, as 37 C.F.R. § 2.145(d)(3) requires. BAI has not appealed the TTAB's decision to the United States Court of Appeals for the Federal Circuit under 15 U.S.C. § 1071(a).

5. This Court has personal jurisdiction over Barrows because he is domiciled in the Commonwealth of Virginia and within this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Barrows, the only defendant, resides in this District. Venue is proper in the Roanoke Division because Barrows resides in Botetourt County, which lies within this Division.

## FACTUAL BACKGROUND

7. BAI is a corporation owned by Virgil Irwin ("Irwin") that manufactures and sells aircraft kits. These kits are packages of parts and materials that a buyer assembles into a working airplane instead of buying a finished one. Irwin formed BAI on October 30, 2023. On or about February 2, 2024, BAI acquired AviPro Aircraft, Ltd. and AviPro GP, Inc. ("AviPro"). AviPro was formed in 2000 to manufacture and sell aircraft kits. That same year, AviPro Aircraft, Ltd. entered into a licensing agreement ("2000 License") with Barrows and R&B Aircraft Company ("R&B") that expressly granted AviPro permission to use the BEARHAWK trademark in connection with AviPro's production of kits and parts for the construction of its Bearhawk line of airplanes. Barrows sells aircraft design plans, or technical drawings.

8. The 2000 License was a windfall for Barrows. Under that agreement, AviPro was required to pay Barrows 4% of the gross sales collected on all parts and kits for the Bearhawk line. Further, AviPro had to require its kit customers to purchase a set of Barrows's design plans. In

other words, under the 2000 License, every kit AviPro sold put money in Barrows's pocket twice: once through the royalty, and again through the sale of his plans to AviPro's customers. Barrows's obligations under the 2000 License included providing customer support to AviPro's clients, purchasers of Barrows's plans, and, if this service was not provided, the 4% royalty would be open to renegotiation. A true and correct copy of the 2000 License is attached hereto as **Exhibit A**.

9. Under the 2000 License, the parties agreed that Barrows would take an active role in inspecting and approving the quality of AviPro's Bearhawk parts and components at three stages: when the first parts and fuselage were finished, when the first airframe was test-assembled, and before the first shipment to customers. The parties also agreed that Barrows would periodically inspect AviPro's Bearhawk demonstrator aircraft.

10. In or about January 2020, Barrows, R&B, and AviPro entered into a new licensing agreement governing AviPro's use of the BEARHAWK trademark name ("2020 License"). The 2020 License was an even greater windfall for Barrows. Barrows was still owed the 4% royalty and, unlike under the 2000 License, was guaranteed 3% of AviPro's gross sales if he stopped supporting AviPro's customers. In addition to requiring its customers to buy a set of Barrows's design plans, under the 2020 License, AviPro had to require them to purchase such plans directly from Barrows. Further, and unlike the 2000 License, the 2020 License contained no quality-control provisions, and Barrows was not required to inspect a single AviPro part, kit, or aircraft. A true and correct copy of the 2020 License is attached hereto as **Exhibit B**.

11. Following BAI's acquisition of AviPro, on April 15, 2024, Barrows sent Irwin a letter stating that BAI could not use his alleged BEARHAWK trademark without an agreement, confirming Barrows's belief that BAI was not a licensee under either AviPro agreement. The parties traded proposals over the following months, including one Irwin signed and sent on October

25, 2024, which Irwin believed memorialized an oral agreement between BAI and Barrows. BAI also enclosed a check for $16,029.46 with the October 2024 proposal, which tendered payment of the final royalty payments owed by AviPro under the 2020 License, and a flat rate payment for the first three (3) aircraft kits BAI had sold. However, Barrows repudiated the existence of any oral agreement. Barrows's final offer, sent November 6, 2024, expired unaccepted on January 1, 2025.

12. On January 8, 2025, after Barrows's final licensee offer had expired by its own terms, Barrows sent Irwin a letter telling him that he should operate under the name BEARHAWK AIRCRAFT KITS (the "Permission Letter"). A true and correct copy of the Permission Letter is attached hereto as **Exhibit C**. Then, on March 20, 2025, Barrows bizarrely demanded that BAI and Irwin stop using his alleged BEARHAWK trademark by June 1, 2025, despite giving permission to use it two months earlier. Nevertheless, BAI continued to use its BEARHAWK-formative marks for almost six months under this express permission.

13. On July 30, 2025, BAI filed with the United States Patent and Trademark Office ("USPTO") the Applications No. 99310499, 99310517, 99311141, 99311130 ("Subject Applications") for certain word marks and a design mark described in more detail below. The Subject Applications were published for opposition on January 13 and 20, 2026. On May 13, 2026, after filing two extensions of time to oppose the Subject Applications, Barrows filed a Notice of Opposition asserting purported priority and likelihood of confusion with the BEARHAWK trademark allegedly owned by Barrows, and fraud on the USPTO by BAI. A true and correct copy of the Notice of Opposition is attached hereto as **Exhibit D**.

14. Although BAI's counsel received notice, BAI was never informed that the Opposition had been filed, or that an answer was due. As a result, on July 23, 2026, the TTAB issued a Notice of Default. BAI's counsel, in addition to not informing BAI of that notice, failed

to handle the default proceedings, and the TTAB entered a Default Judgment against BAI on September 2, 2026. BAI first learned of the default only when the USPTO notified it that the Subject Applications had been abandoned as a result of the Default Judgment.

**<u>The Subject Applications</u>**

15. On July 30, 2025, BAI, through its then counsel, filed the four Subject Applications with the USPTO. True and correct copies of the Subject Applications as filed are attached as **Exhibit E**. Their particulars are as follows:

(a) Serial No. 99310499 — The mark is a drawing of a bear's head with a wing on either side, centered above the word BEARHAWK in bold capital letters, with the word AIRCRAFT in smaller capital letters below, flanked by lines. "Aircraft" is disclaimed. Goods: "Airplanes and structural parts therefor," Class 12. Basis: Section 1(a), with first use and first use in commerce at least as early as October 30, 2023. Published for opposition January 13, 2026.

(b) Serial No. 99310517 — BEARHAWK OUTFITTER (standard characters). Goods: "Airplanes and structural parts therefor," Class 12. Basis: Section 1(b) (intent to use). Published for opposition January 13, 2026.

(c) Serial No. 99311130 — BEARHAWK PATROL (standard characters). Goods: "Airplanes and structural parts therefor," Class 12. Basis: Section 1(a), with first use and first use in commerce at least as early as October 30, 2023. Published for opposition January 20, 2026.

(d) Serial No. 99311141 — BEARHAWK COMPANION (standard characters). Goods: "Airplanes and structural parts therefor," Class 12. Basis: Section 1(a), with first

use and first use in commerce at least as early as October 30, 2023. Published for opposition January 13, 2026.

## I. BAI IS ENTITLED TO *DE NOVO* REVIEW UNDER 15 U.S.C. § 1071(b).

16. Under 15 U.S.C. § 1071(b)(1), a party to an *inter partes* proceeding that is dissatisfied with a decision by the TTAB may bring a civil action against the adverse party, and the court "may adjudge that an applicant is entitled to a registration upon the application involved." 15 U.S.C. § 1071(b)(1). The Court reviews the registrability of the Subject Applications *de novo* and may consider evidence that was not before the TTAB. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014).

17. Upon learning about the Default Judgment and abandonment of the Subject Applications as a result thereof, BAI promptly moved the TTAB under Federal Rule of Civil Procedure 60(b)(1) to set aside the Default Judgment. As of the date this Complaint is filed, BAI's motion remains pending before the TTAB. BAI now brings this action to preserve its statutory right to *de novo* review of the Default Judgment within the sixty-three (63) days allowed under 37 C.F.R. § 2.145(d)(3).

## II. BAI IS ENTITLED TO REGISTRATION OF THE SUBJECT APPLICATIONS.

18. BAI satisfied the statutory requirements for each of the Subject Applications, and the USPTO examined and published all four applications for opposition after determining that BAI appeared entitled to registration. Barrows nevertheless opposed the applications based on alleged prior rights in the BEARHAWK marks and likelihood of confusion. However, Barrows abandoned any rights he may have held in BEARHAWK for airplanes and structural parts through naked licensing, first by granting AviPro permission to use the BEARHAWK marks without retaining any quality control rights, and again by expressly permitting BAI to operate under the BEARHAWK AIRCRAFT KITS name. In any event, even assuming Barrows retained trademark

rights, the parties' respective products and customers, the distinct commercial impressions of the marks, and the complete absence of actual confusion defeat any claim of likelihood of confusion. Finally, BAI's statements in the Subject Applications were accurate, and BAI committed no fraud on the USPTO. BAI is therefore entitled to registration of the BEARHAWK marks for airplanes and structural parts.

**A. The Subject Applications Comply with 15 U.S.C. § 1051.**

19. The Subject Applications submitted to the USPTO by BAI meet all statutory application requirements for each filing basis asserted. BAI filed its applications for the marks BEARHAWK PATROL, BEARHAWK COMPANION, and BEARHAWK AIRCRAFT and Design under Section 1(a) of the Lanham Act, for marks used in commerce. 15 U.S.C. § 1051(a). BAI paid the required fees and filed each application including a verified statement, signed by BAI's attorney of record on BAI's behalf, and specimens of each mark as used. The applications specified BAI's domicile and citizenship, the date of first use of each mark, the date of first use in commerce, the goods on which the mark is used, and a drawing of each mark. BAI's verified statements properly attested that (i) BAI believes it is the owner of the marks, (ii) the facts recited in each application are accurate and supported, (iii) the marks are in use in commerce, and (iv) no other person has the right to use a confusingly similar mark. BAI further verified that it had been warned of punishment for willful false statements in connection with the Subject Applications.

20. BAI filed its application for BEARHAWK OUTFITTER under Section 1(b) of the Lanham Act, as a person with *bona fide* intention, under circumstances showing good faith, to use the mark in commerce. 15 U.S.C. § 1051(b). BAI likewise paid the required fee and filed this application including a verified statement. This application also specified BAI's domicile and citizenship, the goods on which it intends to use the mark, and a drawing of the mark. The verified statement attested that (i) BAI believes it is entitled to use the mark in commerce, (ii) BAI has a

*bona fide* intention to use the mark in commerce, (iii) the facts recited in the application are accurate and supported, and (iv) no other person has the right to use a confusingly similar mark. BAI also verified that it had been warned of punishment for willful false statements in connection with the Subject Applications.

21. Notably, each Subject Application was published for opposition in the *Official Gazette* of the USPTO. Under 15 U.S.C. § 1062(a), the USPTO publishes a mark only if, on examination, "it shall appear that the applicant is entitled to registration." 15 U.S.C. § 1062(a). Publication therefore reflects the examining attorney's determination that BAI is entitled to register each mark.

**B. BAI Owns the Marks Shown in the Subject Applications for the Identified Goods and is Entitled to Registration.**

***i. Barrows Abandoned Any Rights to BEARHAWK by Granting AviPro a Naked License.***

22. Barrows holds no trademark registration for any BEARHAWK mark. Any purported rights Barrows could possibly claim over the BEARHAWK marks for airplanes and structural parts are common-law based. Regardless, Barrows abandoned any such rights through naked licensing as early as January 13, 2020, and no later than January 8, 2025.

23. The 2020 License between Barrows, R&B, and AviPro contains no quality-control provisions. For this reason, the 2020 License is a naked license, which results in abandonment of trademark rights. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010); 15 U.S.C. § 1127.

24. The 2020 License granted express permission for AviPro to use Barrows's "trademark name in relation to Licensee's production of kits and parts for the construction of the Bearhawk line of airplanes including the Bearhawk 4 Place, Patrol, Bearhawk LSA, Bearhawk Companion, and Bearhawk 5." While the preamble states that "production will according (sic) to

Licensor's designs and normal aircraft quality standard," it contains no quality-control requirement, and no inspection right.

25. The absence of quality-control provisions in the 2020 License becomes particularly clear when compared to the 2000 License. The 2000 License provides that "[i]n an effort to ensure the quality of all parts and components bearing the Bearhawk name, it is agreed that Robert Barrows will take an active role in inspecting and approving the quality of those parts before initial shipments are released. The inspections will be at three stages and will take place at the plant in Atlixco, Mexico." The 2000 License further describes each one of the quality control inspection stages.

26. By executing the 2020 License, Barrows effectively gave up the inspection and approval rights expressly granted to him under the 2000 License. Under the 2020 License, Barrows allowed AviPro to manufacture and sell kits and parts for the entire Bearhawk line under the BEARHAWK name without any right to inspect or approve them. On information and belief, this was intentional because Barrows was no longer willing to travel to inspect AviPro's operations.

27. By granting AviPro a naked license, Barrows abandoned whatever rights he claims in the BEARHAWK marks for airplanes and structural parts no later than January 13, 2020, the date the 2020 License was fully executed. BAI filed the Subject Applications more than five years later. By then, Barrows held no rights in the BEARHAWK marks for those goods.

***ii. Barrows Abandoned Any Exclusive Rights to BEARHAWK by Granting Irwin Permission to Use BEARHAWK AIRCRAFT.***

28. After BAI acquired AviPro, Barrows contacted Irwin and alleged that BAI would need a formal written licensing agreement to use the BEARHAWK mark. The parties exchanged proposals, but no written agreement was ever executed.

29. BAI signed a proposed written licensing agreement that Irwin believed memorialized an oral agreement authorizing BAI to use BEARHAWK and even mailed Barrows a check for payment under the oral agreement. However, Barrows repudiated the existence of any oral agreement. Barrows sent Irwin a final offer on November 6, 2024, which expired unaccepted on January 1, 2025.

30. Barrows then sent Irwin the Permission Letter on January 8, 2025, stating that Barrows would continue to sell his plans under the name BEARHAWK AIRCRAFT PLANS and that BAI should use the name BEARHAWK AIRCRAFT KITS. This letter was a significant retreat from his earlier assertion that BAI would need a formal written licensing agreement with Barrows to continue to use the BEARHAWK mark.

31. The Permission Letter granted Irwin permission to use Barrows's purported BEARHAWK AIRCRAFT mark without any quality control. The Permission Letter was likewise a naked license, and, as such, extinguished whatever rights Barrows could claim in the BEARHAWK marks.

32. A subsequent letter from Barrows on March 20, 2025 further confirms that he had expressly authorized BAI to use the BEARHAWK AIRCRAFT mark. In that letter, Barrows states, "I have decided that I can not (sic) work with your disrespect and resistance to pay me for all the engineering and design work I have done on my Bearhawk Designs[.] I am demanding that you no longer use my Trade Mark Name BEARHAWK. This will be effective June 1, 2025. I will no longer recommend or support your Bearhawk Kit Business." This explicit attempt to withdraw permission and "no longer recommend or support" Irwin or BAI using BEARHAWK confirms Barrows's understanding that BAI and Irwin did have permission and support in using the BEARHAWK mark prior to June 1, 2025.

33. Accordingly, Barrows abandoned the BEARHAWK mark for airplanes and structural parts as early as January 13, 2020, the date the 2020 License with AviPro was fully executed—or earlier if he ceased actually exercising quality control permitted under the 2000 License—and by at least January 8, 2025, when Barrows sent Irwin the Permission Letter. Barrows therefore has no superior rights to BEARHAWK.

**C. Barrows Cannot Establish Likelihood of Confusion Even If He Retained Trademark Rights.**

34. Even assuming, *arguendo*, that Barrows has retained rights to BEARHAWK, there is no likelihood of confusion between the parties' marks. BAI and Barrows sell distinct products, their consuming public is highly sophisticated, BAI adopted and applied to register the marks in good faith, the marks are sufficiently distinguishable, and no actual confusion has occurred. *See Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014).

35. The Subject Applications cover registration for "airplanes and structural parts therefor" in International Class 12. BAI is in the business of manufacturing and selling parts kits for aircraft assembly. Barrows's supposed common-law rights in BEARHAWK are for aircraft plans, which are printed matter in International Class 16, and Barrows previously abandoned U.S. Registration No. 2040322 for BEARHAWK in International Class 12. Furthermore, AviPro used the BEARHAWK trademark continuously from at least 2000 through the sale of its business to BAI, even after Barrows ceased exercising any quality control.

36. BAI's customers are deliberate buyers not members of the general public, but a niche community of aircraft builders. These customers buy an aircraft kit and then assemble the aircraft. The purchasing process requires substantial research, technical knowledge, and a significant financial investment. On information and belief, buyers carefully evaluate the kit, its specifications, components, and manufacturer before making a purchase. This level of care makes

it highly unlikely that these customers would confuse BAI's products with those of Barrows based on similarities between the marks.

37. Similarly, Barrows's customers purchase plans to build a particular aircraft model, which requires careful evaluation of the design, technical specifications, construction requirements, and source of the plans before purchasing. Like BAI's customers, these buyers are knowledgeable, deliberate, and sophisticated purchasers. Accordingly, they are unlikely to mistake Barrows's marks for BAI's marks.

38. BAI adopted and applied to register the BEARHAWK marks in good faith. BAI acquired AviPro, an existing aircraft-kit business that had used the BEARHAWK names on kits and parts for more than two decades. BAI paid the royalties AviPro owed for pre-acquisition sales and attempted to negotiate with Barrows a licensing agreement over several months. Ultimately, BAI filed the Subject Applications only after Barrows approved BAI's operation under BEARHAWK AIRCRAFT KITS in the Permission Letter.

39. Each mark in the Subject Applications creates a commercial impression distinct from BEARHAWK as Barrows uses it. BEARHAWK AIRCRAFT and Design combines the wording with a drawing of a bear's head flanked by wings. BEARHAWK OUTFITTER, BEARHAWK PATROL, and BEARHAWK COMPANION each add a distinguishing term identifying a specific product. In the Permission Letter, Barrows himself acknowledged that the parties' respective uses could coexist when he proposed selling plans under the BEARHAWK AIRCRAFT PLANS mark while BAI sold kits under the BEARHAWK AIRCRAFT KITS mark. Therefore, the marks are sufficiently distinct.

40. Finally, no actual confusion has occurred. Barrows's Notice of Opposition identifies no misdirected inquiry, order, or communication. On information and belief, none of Barrows's

customers has reported any instance of confusion between the parties' respective brands. Likewise, BAI has not received any reports of actual confusion.

### D. BAI Honestly Believed It Owned the Marks and Committed No Fraud on the USPTO.

41. BAI made no knowingly false, material representation to the USPTO with intent to deceive in connection with any of the Subject Applications. *See In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009).

42. A claim of exclusive rights in a different class is not false, and mere knowledge by BAI of Barrows's asserted rights does not establish a knowing, material misrepresentation made with intent to deceive. Accordingly, Barrows's fraud claim in the Opposition fails because BAI reasonably believed that any rights Barrows retained did not extend to airplanes or structural parts. BAI's registration applications cover airplanes and structural parts in International Class 12, while, on information and belief, Barrows only sells aircraft plans (printed matter) in International Class 16.

43. Additionally, BAI's first use claim of October 30, 2023, in the applications is not facially false as Barrows claims. AviPro, BAI's predecessor, used the BEARHAWK trademark continuously from at least 2000 through the sale of its business to BAI. Because Barrows granted AviPro a naked license in 2020 lacking any quality-control provisions, he abandoned his trademark rights on that date. And BAI, as successor to AviPro's business, may be entitled to rely on AviPro's use of the mark. In fact, BAI could have claimed first use even earlier based on AviPro's use.

## III. BAI IS ENTITLED TO A DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201–2202.

44. BAI is entitled to declaratory relief because an actual and immediate controversy exists between BAI and Barrows concerning whether the Subject Applications are registrable. *See*

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004); 28 U.S.C. §§ 2201–2202.

45. Barrows erroneously claims that he owns the BEARHAWK marks, including BEARHAWK PATROL and BEARHAWK COMPANION. Barrows opposed all four Subject Applications before the TTAB, alleging priority and likelihood of confusion, and fraud. Barrows also obtained a default judgment against BAI, which resulted in abandonment of the Subject Applications. BAI promptly moved to set aside the Default Judgment upon learning about it. That motion is still pending before the TTAB.

46. BAI, for its part, contends that it owns each BEARHAWK mark in the Subject Applications and is entitled to registration by the USPTO. Accordingly, the parties' legal interests are directly adverse, and the dispute is ripe for decision.

## CAUSE OF ACTION

### Count I — Declaratory Judgment That the Subject Applications Are Registrable (15 U.S.C. § 1071(b); 28 U.S.C. §§ 2201–2202)

47. BAI incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

48. Under 15 U.S.C. § 1071(b)(1), a party to an inter partes proceeding that is dissatisfied with the TTAB's decision may bring a civil action against the adverse party, and the court "may adjudge that an applicant is entitled to a registration upon the application involved." 15 U.S.C. § 1071(b)(1). The Court should review the registrability of the Subject Applications *de novo* and may consider evidence that was not before the TTAB.

49. An actual, substantial, and immediate controversy exists between BAI and Barrows, who have adverse legal interests concerning whether the Subject Applications are registrable. Barrows filed the Opposition concerning all four Subject Applications before the

TTAB, wherein Barrows alleges, among other things, priority and likelihood of confusion, and fraud in connection with BAI's applications to register the BEARHAWK marks.

50. Barrows has no prior, unabandoned mark that bars registration of the Subject Applications under 15 U.S.C. § 1052(d). Barrows abandoned any rights he allegedly owned in the BEARHAWK marks for airplanes and structural parts at least as early as January 13, 2020, when Barrows and R&B granted AviPro the 2020 License, a naked license that permitted AviPro's trademark use without reserving any quality control. Barrows further abandoned any remaining rights in BEARHAWK for airplanes and structural parts no later than January 8, 2025, when, through the Permission Letter, Barrows told Irwin that BAI could operate under BEARHAWK AIRCRAFT KITS and, again, reserved no quality control and no right of inspection.

51. Even assuming that Barrows retained any rights to BEARHAWK, no likelihood of confusion among the parties' marks exists. Any such rights are limited to BEARHAWK for printed aircraft design plans, which are different from the aircraft parts kits sold by BAI. The customers of BAI's and Barrows's products are highly sophisticated and are unlikely to confuse BAI's products with Barrows's based on similarities between the marks. BAI filed the Subject Applications in good faith and only after Barrows approved BAI's operation under BEARHAWK AIRCRAFT KITS in the Permission Letter. The marks in the Subject Applications are sufficiently distinct from BEARHAWK as used by Barrows. Further, no actual confusion between the parties' respective brands has occurred.

52. BAI is therefore entitled to a declaration under 15 U.S.C. § 1071(b) and 28 U.S.C. § 2201 that each Subject Application is registrable and that BAI is entitled to registration thereof.

## PRAYER FOR RELIEF

WHEREFORE, BAI respectfully requests that this Court enter judgment in its favor and against Barrows declaring that each of the following applications is registrable on the USPTO's Principal Register, and that BAI is entitled to registration of each:

(a) U.S. Application Serial No. 99310499 for BEARHAWK AIRCRAFT and Design, for "airplanes and structural parts therefor" in International Class 12;

(b) U.S. Application Serial No. 99310517 for BEARHAWK OUTFITTER, for "airplanes and structural parts therefor" in International Class 12;

(c) U.S. Application Serial No. 99311130 for BEARHAWK PATROL, for "airplanes not for military use; structural parts for airplanes" in International Class 12; and

(d) U.S. Application Serial No. 99311141 for BEARHAWK COMPANION, for "airplanes and structural parts therefor" in International Class 12.

BAI further requests that this Court grant such other and further relief as this Court may deem just and proper.

Dated: November 3, 2026

Respectfully submitted,

BEARHAWK AIRCRAFT, INC.

By: /s/ Andrew K. Clark
Counsel

Andrew K. Clark (VSB No. 45269)
Alexander P. Faig (VSB No. 96248)
HIRSCHLER FLEISCHER
A PROFESSIONAL
CORPORATION
The Edgeworth Building
2100 East Cary Street (23223)
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone: (804) 771-9514
Facsimile: (804) 644-0957
E-mail: aclark@hirschlerlaw.com;
afaig@hirschlerlaw.com

Austin Champion
(Texas Bar No. 24065030)
*Pro Hac Vice to Be Submitted*
Benjamin J. Setnick
(Texas Bar No. 24058820)
*Pro Hac Vice to Be Submitted*
Ryan J. Reynolds
(Texas Bar No. 24110268)
*Pro Hac Vice to Be Submitted*
CHAMPION LLP
2200 Ross Avenue
Suite 4500W
Dallas, Texas 75201
Telephone: (214) 225-8880
Facsimile: (214) 225-8881
E-mail:
austin.champion@championllp.com;
ben.setnick@championllp.com;
ryan.reynolds@championllp.com
**Counsel for Plaintiff**